**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Leslie Crepeau

    v.                                    Civil No. 11-cv-125-JL

JP Morgan Chase Bank, N.A., et al.


**REPORT AND RECOMMENDATION**

    Pro se plaintiff, Leslie Crepeau, has filed a complaint (doc. no. 1), naming as defendants JP Morgan Chase Bank, N.A. ("JP Morgan"); Federal National Mortgage Association ("Fannie Mae"); JP Morgan's attorneys, Deirdre M. Keady, Mark P. Harmon, and Harmon Law Offices, P.C.; and 1000 unidentified "John Doe" investors.  Because Crepeau is proceeding pro se and in forma pauperis, the matter is before the court for preliminary review.  See 28 U.S.C. § 1915(e); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(1)(B).

**Preliminary Review Standard**

    Under LR 4.3(d)(1)(B), when an in forma pauperis plaintiff commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter

jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See 28 U.S.C. § 1915(e)(2); LR 4.3(d)(1)(B).  In conducting a preliminary review, the court construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  The court first screens the complaint for statements that "merely offer legal conclusions couched as fact

or threadbare recitals of the elements of a cause of action."
Id. (citations, internal quotation marks and alterations
omitted).  A claim consisting of little more than "allegations
that merely parrot the elements of the cause of action" may be
dismissed.  Id.  The second part of the test requires the court
to credit as true all non-conclusory factual allegations and the
reasonable inferences drawn from those allegations, and then to
determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).
The "make-or-break standard" is that those allegations and
inferences, taken as true, "must state a plausible, not a merely
conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of
Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at
555-56 ("Factual allegations must be enough to raise a right to
relief above the speculative level, on the assumption that all
the allegations in the complaint are true (even if doubtful in
fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-
specific task that requires the reviewing court to draw on its
judicial experience and common sense."  Iqbal, 556 U.S. at ___,

129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits."  Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."  Id.

## Background[1]

Washington Mutual Bank held a loan secured by a mortgage on Crepeau's home.  At some point after JP Morgan claimed to have acquired her Washington Mutual loan and mortgage,[2] Crepeau began to fall behind on her loan payments.  She attempted several

---

[1]The relevant facts set forth herein, taken as true for the purposes of preliminary review, are derived from the complaint and from items in the docket of Crepeau's Chapter 13 proceeding as to which this court may properly take judicial notice.  See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006) (court in determining if complaint meets notice pleading standard may consider facts properly subject to judicial notice); see also Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001) (federal courts may take judicial notice of proceedings in other courts if relevant to matters at hand).

[2]Washington Mutual Bank was placed in Federal Deposit Insurance Corporation ("FDIC") receivership in 2008, and JP Morgan, in September 2008, acquired certain loans and mortgages held by Washington Mutual.  See Yeomalakis v. FDIC, 562 F.3d 56, 59 (1st Cir. 2009).  Although Crepeau subsequently challenged JP Morgan's claim of having acquired her mortgage and note, she has indicated that she attempted to work out a loan modification with JP Morgan.

times thereafter to work out a loan modification with JP Morgan, but those efforts were unsuccessful.

On December 29, 2009, Crepeau received a letter from Chase Home Finance, LLC, threatening foreclosure because of her mortgage arrearages.  Crepeau learned in a February 2010 phone call with a Chase Home Finance representative that her request for a loan modification had been denied.  On March 8, 2010, Crepeau received a follow-up letter from Chase Home Finance, stating that Crepeau had failed to send certain financial information as Chase Home Finance had requested in correspondence that it sent to her.  Crepeau asserts that she never received such correspondence from Chase Home Finance.

Crepeau sent a letter by certified mail to JP Morgan on April 6, 2010, seeking "validation, substantiation and authentication" of the claim that it held Crepeau's note and mortgage.  Crepeau asserts that JP Morgan failed to provide the requested information.

On April 23, 2010, Crepeau initiated a Chapter 13 bankruptcy proceeding in an effort to stay a foreclosure sale on her home.  See In re Crepeau, No. 10-11793-JMD (Bankr. D.N.H. filed Apr. 23, 2010) ("In re Crepeau").  JP Morgan, acting as a loan servicer for Fannie Mae, filed a proof of claim in the

bankruptcy proceeding, and Crepeau filed an objection to that claim.  Fannie Mae thereafter filed a motion for relief from the automatic stay, asserting that JP Morgan had assigned the Crepeau mortgage to Fannie Mae on March 20, 2010, and that JP Morgan was holding the note on Fannie Mae's behalf as a loan servicer.  See id. (doc. no. 51).

Crepeau objected to the motion by, among other things, challenging Fannie Mae's standing in the bankruptcy proceeding, and challenging the validity of JP Morgan's claim, see id. (doc. no. 54).  The bankruptcy judge initially denied Fannie Mae's motion, instead requiring Crepeau to make certain "adequate protection payments" to JP Morgan.  See id. (doc. no. 64). After Crepeau failed to make the payments as ordered, Fannie Mae filed a notice of non-compliance, requesting that the automatic stay be lifted to allow it to pursue its rights and remedies under state law regarding the note and mortgage.  See id. (doc. no. 68).  The court issued an order on January 25, 2011, lifting the stay as to Fannie Mae.  See id. (doc. no. 70).

At an earlier stage of the case, the bankruptcy trustee had filed a motion to dismiss the Chapter 13 proceeding, see id. (doc. no. 27), asserting as cause that the amount of the mortgage arrearages rendered the Chapter 13 plan underfunded.

Crepeau objected to that motion by challenging the validity and
substantiation of JP Morgan's claim and Fannie Mae's status and
standing as a creditor.  See id. (doc. no. 69).  The bankruptcy
judge, in granting the motion to dismiss, first provided Crepeau
an opportunity to convert the case into a Chapter 7 proceeding,
then dismissed the case when she failed to do so.  See id. (doc.
no. 78) (dismissing debtor).

The complaint here sets forth the following claims[3]:

1.    JP Morgan is liable to Crepeau for violating the Real
Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C.
§§ 2601-2617, by failing to verify its claim that it held
the note secured by a mortgage on her home, as Crepeau
requested in a "qualified written request" sent to JP
Morgan in April 2010.

2.    JP Morgan is liable to Crepeau for violations of the
Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601-1667f.

3.    JP Morgan is liable to Crepeau for violating the Fair
Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-
1692p.

4.    Defendants are liable to Crepeau for fraud under New
Hampshire law, in that: (1) JP Morgan, through its
attorneys, filed a false proof of claim in Crepeau's
Chapter 13 bankruptcy proceeding; and (2) Fannie Mae filed
a fraudulent motion for relief of stay in the Chapter 13
bankruptcy proceeding, and the bankruptcy judge, in
reliance upon those filings, granted Fannie Mae relief from

_____

[3]The identification of the claims in this Report and
Recommendation will be considered to be the claims raised in the
complaint for all purposes in this case.  If Crepeau disagrees
with this identification of the claims, she must properly file a
motion for reconsideration or a motion to amend the complaint.

the automatic stay, which allowed Fannie Mae to proceed
with a foreclosure sale on Crepeau's home.

## Discussion

I.   RESPA

Pursuant to the Real Estate Settlement Procedures Act
("RESPA"), certain mortgage loan "servicers" -- entities
responsible for receiving scheduled payments from the borrower
and making payments as required by the terms of a loan -- have
an obligation within a specified time to respond to a borrower's
"qualified written request" ("QWR"),[4] seeking information
relating to the servicing of the loan.  See 12 U.S.C. § 2605(e).
The servicer is required, within a specified time, to
acknowledge receipt of a QWR, and, within a specified time
thereafter, to complete an investigation and either provide the
borrower with the requested information, or explain why the
information cannot be provided and identify a point of contact
to assist the borrower.  See id. § 2605(e)(2).  Borrowers may
sue a loan servicer for actual damages resulting from its
failure to comply with RESPA.  See id. § 2605(f)(1).  The

---

[4]A QWR is written correspondence addressed to a loan
servicer that enables the servicer to identify the borrower and
provides sufficient detail to enable the servicer to identify
the information sought by the borrower.  See 12 U.S.C.
§ 2605(e)(1).

complaint indicates that JP Morgan was a loan servicer at the
time it is alleged to have received a QWR from Crepeau.

     To state a claim for damages, a borrower must allege facts
that show that the servicer's failure to comply with the QWR
obligations resulted in pecuniary damages.  See Williams v.
Litton Loan Servicing, No. 10-aa866-MLW, 2011 WL 3585528, *4 (D.
Mass. Aug. 15, 2011); see also 12 U.S.C. § 2605(f)(1)(A)
(borrower may file suit to recover "actual damages to the
borrower as a result of the [servicer's] failure" to comply with
RESPA); Okoye v. Bank of New York Mellon, No. 10-11563-DPW, 2011
WL 3269686, *17 (D. Mass. July 28, 2011) (plaintiff must "allege
specific damages and identify how the purported RESPA violations
caused those damages"); Gorham-DiMaggio v. Countrywide Home
Loans, Inc., No. 1:08-CV-019 (LEK/RFT), 2009 WL 1748743, *8
(N.D.N.Y. June 19, 2009) ("by alleging a breach of RESPA duties
alone without alleging actual damages and the proximate cause of
the breach of duty to those damages, Plaintiff fails to state a
RESPA claim"), aff'd, 421 F. App'x 97 (2d Cir. 2011).  Here,
stripped of any conclusions of law, the complaint states that
Crepeau sent a letter by certified mail to JP Morgan, which was
received on April 6, 2011, seeking information relating to the
validity of its claim concerning the note and mortgage.  After

JP Morgan allegedly failed to provide that information, on April 23, 2011, Crepeau filed a Chapter 13 bankruptcy proceeding to stay the foreclosure sale.

The complaint indicates that Crepeau incurred costs in filing for bankruptcy to stop an imminent foreclosure, and to seek relief from her creditors.  The complaint fails to allege, however, that JP Morgan's withholding of information caused Crepeau to incur such costs.  Crepeau has not stated a plausible claim for relief under RESPA in that she has failed to show that JP Morgan's relevant conduct caused her to incur costs, and there are no allegations supporting a claim for statutory damages.  See Edwards v. Wachovia Mortg., No. 10CV1763 WQH (POR), 2011 WL 4591907, *4 (S.D. Cal. Oct. 4, 2011) ("A plaintiff is entitled to recover for the loss that relates to the RESPA violation, not for all losses related to foreclosure activity.").  Accordingly, the court should dismiss the RESPA claim.

II.  TILA

Crepeau has alleged generally that JP Morgan is liable to her under TILA.  TILA requires a creditor to disclose things such as "finance charges, annual percentage rates of interest, and borrowers' rights, and it prescribes civil liability for any

creditor who fails to do so," <u>Koons Buick Pontiac GMC, Inc. v.</u>
<u>Nigh</u>, 543 U.S. 50, 53-54 (2004), and renders an assignee of a
mortgage liable to the borrower under certain limited
circumstances.  <u>See generally</u> 15 U.S.C. §§ 1640 & 1641.

"To state a claim under TILA a plaintiff must show that
[she] did not receive required written disclosures, or that the
disclosures were not clear and conspicuous."  <u>Goldblatt v.</u>
<u>Herron</u>, No. 4:10-cv-01183-DGK, 2011 WL 3584794, *3 (W.D. Mo.
Aug. 15, 2011).  The complaint here does not assert facts
showing that any defendant or other person failed to make
disclosures to Crepeau as required by TILA.  Accordingly, the
TILA claim should be dismissed.

III. <u>FDCPA</u>

Crepeau has alleged generally that JP Morgan violated the
FDCPA.  The FDCPA prohibits a debt collector from engaging in
harassing conduct, using unfair debt collection methods, and
making false or misleading representations in connection with
debt collection; the statute further provides a cause of action
for damages resulting from such conduct.  <u>See</u> <u>Warren v.</u>
<u>Countrywide Home Loans, Inc.</u>, 342 F. App'x 458, 460 (11th Cir.
2009).

To state a claim for relief under the FDCPA, a plaintiff must show that she has been (1) the "'object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.'"  Beadle v. Haughey, 2005 DNH 016, 2005 WL 300060, *2 (D.N.H. Feb. 9, 2005) (citation omitted).  The term "debt collector" means "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The term does not include persons attempting to collect such debts if the "debt was not in default" at the time it was obtained by such person.  Id. § 1692a(6)(F)(iii).

The FDCPA "'applies only to debt collectors and not to creditors or mortgage servicers.'"  Kabir v. Statebridge Co., LLC, 2011 WL 4500050, *9 (N.D. Ga. Sept. 27, 2011); see also Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985) (term "debt collector" does not include "consumer's creditors, a

mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned"); Beadle, 2005 WL 300060 at *1 ("Mortgagees are not 'debt collectors' within the meaning of the FDCPA.").

There are no allegations in the complaint here suggesting that the loan was in default when JP Morgan acquired it or began servicing it. For that reason, the complaint fails to show that JP Morgan was a "debt collector" for the purposes of the FDCPA. See Fogle v. Wilmington Finance, No. 08-cv-388-JD, 2011 DNH 006, 2011 WL 90229, *2 (D.N.H. Jan. 11, 2011) (dismissing claim against loan servicer because plaintiff failed to allege facts showing that loan was in default when servicer began to service loan); see also Comer v. J.P. Morgan Chase Bank, N.A., No. 4:11-cv-88(CDL), 2011 WL 5878400, *3 (M.D. Ga. Nov. 23, 2011) ("debt must be 'in default,' *not allegedly in default*, for a company like Chase, which is not in the business of collecting another's debt, to be considered a debt collector" (emphasis in original)). Because Crepeau has failed to allege facts to state a plausible claim for relief under the FDCPA as to JP Morgan, the court should dismiss the claim.

13

IV.   Fraudulent Filings in Bankruptcy Proceeding

    Crepeau has alleged facts suggesting that her state law fraud claims against defendants are within this court's diversity jurisdiction.  See 28 U.S.C. § 1332.  To state a fraud claim under New Hampshire law, a plaintiff must show that defendant "made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely on it," and that the plaintiff suffered pecuniary loss due to justifiable reliance upon that misrepresentation.  Snierson v. Scruton, 145 N.H. 73, 77, 761 A.2d 1046, 1049 (2000); see also Gray v. First NH Banks, 138 N.H. 279, 283, 640 A.2d 276, 279 (1994).  When averring fraud in a complaint, "a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); see also Brzica v. Trustees of Dartmouth Coll., 147 N.H. 443, 449, 791 A.2d 990, 995 (2002) (to withstand motion to dismiss, plaintiff must specify essential details of fraud and specifically allege facts of defendant's fraudulent actions).

    Here, Crepeau has asserted that defendants are liable to her because (1) JP Morgan, through its attorneys, filed an allegedly false proof of claim in Crepeau's Chapter 13 bankruptcy proceeding, and (2) Fannie Mae filed a "fraudulent"

motion for relief from the stay in the bankruptcy proceeding, and relying upon those filings, the bankruptcy judge granted Fannie Mae's motion for relief from the stay, which resulted in a foreclosure sale on Crepeau's home.  Specifically, Crepeau asserts that the proof of claim was "false" because JP Morgan was not a creditor and did not have standing to assert a claim against the estate, and Fannie Mae's motion was "fraudulent" because it was not a creditor or holder in due course and had not filed a proof of claim, thereby rendering it unable to assert any claim in the bankruptcy proceeding.

Crepeau's assertions in this court echo those she made in the Chapter 13 proceeding.  Crepeau has not appealed any order issued in that case, and the court declines to construe the matter before it as a misfiled, untimely notice of appeal of the bankruptcy court's orders.

The doctrine of collateral estoppel precludes a plaintiff from relitigating issues that she actually litigated in a prior court proceeding, which were finally determined in that proceeding, and which were essential to that court's final judgment.  See Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 430 (1st Cir. 2005).  Here, each of the collateral estoppel criteria is met.  Both here and in the bankruptcy court, Crepeau asserted

that neither JP Morgan, nor Fannie Mae validly held the note and
mortgage, and that those defendants, acting through their
attorneys, did not substantiate their claims against the
property in the bankruptcy proceeding. Crepeau litigated those
issues in connection with: (1) her objection to JP Morgan's
claim; (2) her objection to the motion for relief from the stay;
and (3) her objection to the trustee's motion to dismiss.
Crepeau is collaterally estopped from asserting that Fannie
Mae's motion was "fraudulent," and that JP Morgan's claim was
"false," insofar as she bases those claims on the same
objections she made in bankruptcy court to their standing to
file a proof of claim and to seek relief from the stay. The
bankruptcy judge necessarily rejected those arguments in first
ordering Crepeau to make adequate protection payments to JP
Morgan, and then granting Fannie Mae's motion when Crepeau
failed to make those payments.

Crepeau's fraud claim rests on her contention that
defendants falsely asserted that they were creditors and holders
in due course, and that those assertions were designed to induce
a third party, the bankruptcy judge, to issue orders that led to
the foreclosure sale that caused her harm. Presuming that New
Hampshire courts would recognize a cause of action where a third

party judge's rulings in reliance on a litigant's alleged
misrepresentations result in harm to a plaintiff, the court
notes that Crepeau has not shown that the bankruptcy court
relied on the representations she cites as false.

Contrary to Crepeau's contentions, the bankruptcy judge did
not issue any order specifically validating defendants' claims
as creditors, or finding them to be holders in due course.  The
court's order simply granted Fannie Mae and JP Morgan, as the
loan servicer, relief from the stay so that Fannie Mae could
pursue whatever state rights or remedies it might have, based on
an implicit finding that Fannie Mae had a "colorable" interest
in the property at issue.  Grella v. Salem Five Cent Sav. Bank,
42 F.3d 26, 33 (1st Cir. 1994) (bankruptcy judge's order
granting relief from stay necessarily includes the finding that
claimant's interest in property was colorable).  Nothing
asserted in the complaint shows that Fannie Mae or JP Morgan
made any materially false statements as to that limited issue,
and, moreover, Crepeau would be collaterally estopped from
relitigating the issue to the extent that it is premised on the
equivalent standing issue she raised in the bankruptcy court.
The bankruptcy court's order granting Fannie Mae relief from a
stay was a final order that implicitly, and necessarily,

rejected Crepeau's objections as to Fannie Mae's ability to
obtain relief from the stay.  See Tringali v. Hathaway Mach.
Co., 796 F.2d 553, 558 (1st Cir. 1986) (order granting relief
from stay is final order); Swiatkowski v. Citibank, 745 F. Supp.
2d 150, 170 (E.D.N.Y. 2010) (collateral estoppel barred
plaintiff from pursuing claim in district court asserting that
defendants had submitted fraudulent documentation to bankruptcy
court, as plaintiff had full and fair opportunity to litigate
specific issues in bankruptcy court, and bankruptcy judge had
explicitly overruled plaintiff's objections in its order
dismissing case), aff'd, No. 10-4623-CV, 2011 WL 5555856 (2d
Cir. Nov. 16, 2011).  Accordingly, Crepeau's fraud claims should
be dismissed.

## Conclusion

For the foregoing reasons, the court should dismiss the
complaint (doc. no. 1).  Any objections to this Report and
Recommendation must be filed within fourteen days of receipt of
this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file
objections within the specified time waives the right to appeal
the district court's order.  See United States v. De Jesús-
Viera, 655 F.3d 52, 57 (1st Cir. 2011) (citing United States v.
Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008)); Sch. Union No.

37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010)

(only issues fairly raised by objections to magistrate judge's

report are subject to review by district court; issues not

preserved by such objection are precluded on appeal).

_____
Landya McCafferty
United States Magistrate Judge

December 5, 2011

cc: Leslie Crepeau, pro se

LM:nmd